The second case is Raphael Stein v. Adena Kohn Good morning, Mr. Attorney Stein. You have reserved two minutes for rebuttal. Yes, Your Honor. You may proceed. Good morning, Your Honors, and may it please the Court. My name is Raphael Stein, representing myself as the petitioner appellant. This case involves the wrongful retention of a petitioner's three children in the United States while on an extended visit from their country of habitual residence, Canada, for the purposes of their mother's medical treatment amid the coronavirus pandemic. This petition requested the return of the petitioner's children to Canada for a custody hearing. The District Court denied the petition on the basis of the one-year and settled exception. I respectfully submit that the District Court's decision appears to be erroneous for two key reasons. First, the District Court identified the date of retention by relying only on findings about what the petitioner knew and when the petitioner knew it or should have known. However, the District Court did not identify any actual breach of the petitioner's custody rights per the meaning of the convention or the case law standards. The record shows that the petitioner was fully exercising his custody rights up until January of 2022, while the respondent was still in New York for treatment, when he first experienced an actual breach of custody rights and shortly afterward took action to reassert those rights. The record shows that the parties were in the United States for a specific, limited purpose. The treating doctor had instructed unequivocally that the respondent remain in New York for treatment, fearing relapse if the treatment ended prematurely without his approval. The case here is clearly one of anticipatory breach because the respondent's communications occurred during the agreed-upon visit and had no actual or even theoretical breach of the petitioner's rights. The District Court generated a phantom breach of custody rights and a phantom reassertion of custody rights by interpreting the petitioner's feelings about the circumstances from his testimony. The District Court's decision would force parents and families to scramble to undo existing parental and family agreements, potentially with severe consequences, over mere anticipatory disputes. It means that families on extended stays in the U.S. for academic, employment, medical, or other reasons would be unprotected by the convention. The second aspect is over the settles, and I respectfully submit that the District Court erred by denying the petition on that basis because the Court did not perform the proper analysis on whether the children were settled per the text and purpose of the convention, the statute, and the case law. The District Court examined factors such as school attendance, friends, developing a routine, and so on, but these are factors that will almost always be present when parents plan on taking an extended stay abroad. Parents will obviously make these efforts to settle the children and attend school and develop a routine. And that is why courts, especially in long-term retention cases, according to the State Department analysis of the convention, is that the courts must carefully consider, quote, evidence of continuing contacts with and ties to his or her state of habitual residence. The one-year unsettled exception, like all of the convention's exceptions, are to be construed narrowly. I see that I'm low on time. I'm going to just get through this point. If this case can be shoehorned into this narrow exception, it's difficult to see many cases that wouldn't be in long-term visits. The children here, the record shows clearly that the children made regular visits to Montreal where they were born and raised, where their parents and their grandparents were born and raised, where they have strong roots, where they speak the language, they speak the culture. They certainly have memories. They were in the United States for the purpose of their mother's recovery during the height of the strict pandemic restrictions. The parties were in a small apartment with the children, with the respondent's mother, without a settled purpose, and the record shows that the presence was transitory. And finally, the New York State Court, which was overseeing interim custody, permitted the children to travel to Canada, and the district court followed that decision. So there's certainly no harm in returning the children for a custody hearing. Mr. Stein, I definitely want to give you time, and we've already exceeded the time. I have a question for you. You have reserved two minutes for rebuttal, but I just have a question of clarification. I want to understand your argument is that there was no breach of custody rights until the locks on the door to apartment 11A were changed. That's your claim, correct? No, Your Honor. With respect, it's the date that the petitioner became aware of the locks being changed, and that was in January of 2022. Right. Now, what I'm saying is your claim is that the breach occurred when the locks were changed, but that you only became aware of that in January 2022, correct? Well, the petitioner would argue that the breach happens when he discovers that he no longer has access to the children. I'm just trying to understand the petitioner's claim here. But the locks were actually changed November 22, 2021. Is that correct? I believe that's the date in the record. I just wanted to clarify that. Thank you so much. Thank you, Your Honor. You have reserved your full two minutes for rebuttal. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, my name is Jeremy Morley. I represent the respondent, Idina Cohen. With your permission, I may refer to the parties by their first names. The Court's rulings of this Court in Markson v. Hochtauer, and then upheld most recently in the Lamanto case, governed this case. Judge Bricchetti got it right, cited the cases, cited the law correctly. The date that is relevant to a wrongful retention or an alleged wrongful retention is the date when, unless there is a clear and very specific date of return, or even then, the relevant date is the date when the respondent says, I'm not going back. That date was in March of 2021. It was repeated regularly. Judge Bricchetti correctly found that the events of March 2021 represent a clear impasse between the parties. He wanted them back. Idina wanted to stay in Muncie. That was then clearly stated to Rafi on a whole range of dates within 2021. In fact, Rafi told the Quebec Central Authority in August of 2022 that the relevant date was August 2021. That's when he says the wrongful retention occurred, three days short of what he thought was the one-year period. Later, when I think he realized that the one-year period is not told until the case is actually filed in court under the Hague Convention, only then did he concoct a claim that it was January 2022 that was the date that he really understood that the kids were not going home. Judge Bricchetti is the decision-maker. He applied the law correctly. His interpretation of the facts, and I could go through event after event after event in 2021 when Rafi clearly knew that Idina was not going back. She said it was unsafe to go back. Rafi said to her in September, here's a copy of a complaint that I have filed in Canada for a divorce because you're not bringing the kids back. That was a fake complaint. There was no such filing, and he lied about that. But it clearly represented a time when he for sure knew that the kids were not going back to Canada. I have a question for you as well for clarification. It appears that Mr. Stein has confirmed that his claim is he wasn't aware the locks were changed until January 2022, but they were in fact changed in November 2021. Is that correct? Yes, Your Honor. Okay. And my other question is in analyzing the non-exhaustive factors in Lozano, the district court found that, is it Cohn or Cahn?  Cohn, that Ms. Cohn had not maintained consistent employment since relocating to Monsey. Can you identify any basis in the record for us to find that that was clearly erroneous, and if so, where? I'm sorry, that she was not working? The finding was that she has not maintained consistent employment since relocating, and your claim is that that was clearly erroneous. What's the basis for that? Forgive me. I'm not saying that that was clearly erroneous. Okay. I'm saying that the Lozano factors were amply fulfilled. She was not working. She was doing occasional odd jobs, but she was not employed. She was home with the children. That's what her job was. Mr. Moreland, may I ask you to address Mr. Stein's argument that the settlement of the children here in the United States was decided without the district court considering certain factors? If I understood him correctly, he's suggesting that staying here while the mother was receiving treatment, and staying here during the COVID pandemic, was not done so much in order to settle the family here as it was to deal with what were circumstances that were not indicative of a desire to change, and therefore shouldn't weigh that heavily in deciding whether the children were settled. Help me out with why you think that argument shouldn't persuade. Your Honor, the convention refers to the one-year period, and once that is satisfied, the test is whether the children are now settled. So one needs to look at the situation, as I believe was stated in Lozano, through the eyes of the children. Judge Brichetti found that the children were fully settled because they were living always in the same apartment complex, next door or opposite to Grandma. They were living surrounded by family. They were surrounded by their very warm community. They went to the same doctors. They went to the same dentists. They went to the synagogue around the corner. One child had a singing role. The test is the objective test of were the children there with a significant degree of being emotionally and actually settled in that new environment. I've never seen a case which hinges on the intention of the parents in determining whether or not the children are actually settled. And how about Mr. Stein's citation to court orders allowing them to return to Montreal regularly? He asked for permission to take the children back for visits, and some of those visits did occur. There were measures put in place to ensure that the children would come back home to their home in Muncie, New York, and so that was accomplished, and that does not affect the fact that the kids were living in, going to school in, going to the synagogue in, and met members of the community in Muncie, New York, with occasional trips to see their paternal grandparents in Montreal. And that was strictly conditioned upon him agreeing to return the children, which he did. Okay. Thank you. Thank you, counsel. Thank you, Alice. Mr. Stein, you have two minutes for rebuttal. Thank you, Your Honor. Well, the first part is that what my opponent argues is that is essentially what I said in the opening, is that what the petitioner knew, what he knew, he had an onus, he knew this, but that is not the governing factor here. In a long-term retention case, the courts have found in other cases, there actually may seem to be a circuit split on this, and it's addressed in my brief. In the Torrin case, the court says that the petitioner was not even allowed to file a hate petition yet, because even though the wife said she was going to retain the children, she hadn't actually done so yet. There were some facts that were wrong. The central authority noticed it didn't say the date of wrongful detention. The form says that the date of removal, and the petitioner put the date that the children had actually left Canada. That was his understanding, and the district court credited that. The events related to the divorce filing was also addressed in the brief. There were no measures put in place by the court. The state court gave the petitioner free reign to travel to Montreal. They recognized the children's connection to it, and what's really important is that the State Department legal analysis, which is very key here, because in the Supreme Court case, in the Abbott case, the Supreme Court gave a lot of weight to what the executive branch decides when it comes to conventions. The Third Circuit has already codified three, but the two very important factors for us in this case, in a long-term retention case, is the children's continuing ties to their habitual residence and the parental involvement. In this case, it's very clear. One thing that the court shouldn't lose sight of is that the children can certainly visit Canada very regularly. It would take very little time to hold a custody hearing in Canada, which is the court that really should be determining their best interests. That is the court. The district court is not really supposed to determine best interests unless, you know, in extreme cases, if one of the narrow exceptions apply. Let me ask you about that, and it goes to the date of your knowledge of your wife's intention here. She filed for divorce in December of 22, correct? Your Honor, it was October 2021.  But there was indication that the divorce petition sought full custody of the children, right? I mean, that's what she was asking for. Your Honor, the divorce petition mentioned the word custody once, not full custody, not sole custody. It was part of a preliminary divorce filing that would still require the response. Well, but as I understand it, you testified that after the divorce filing, you were worried that the children were going to live in the United States permanently. So why isn't that at least the relevant time for you to be aware that your wife didn't intend to return the children to Canada? Yes, Your Honor. The dates of these notices, and certainly the petitioner was aware that this was a serious risk, but the parties still had to be there for the respondent's treatment. So the petitioner was in a very impossible situation where what's relevant to this Court is that it was still the agreed-upon visit. They were still there for that same reason, and the treatment was still ongoing. And there was a six-month period that they had before a divorce could be acted upon that the petitioner was trying to work out something that would be best for the family and best for the respondent. Thank you. Thank you, Your Honor. Thank you. That concludes the argument on this case. Thank you to both sides. We will reserve decision.